**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.O.**

**No. 21-0520** (Kanawha County 20-JA-114)

**MEMORANDUM DECISION**

Petitioner Father D.S., by counsel Matthew A. Victor, appeals the Circuit Court of Kanawha County's June 8, 2021, order terminating his parental rights to B.O.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Bryan B. Escue, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights by employing the most drastic disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed an abuse and neglect petition alleging that the mother failed to protect her children from her boyfriend, petitioner herein.[2] The DHHR alleged that petitioner was arrested and charged with child abuse causing injury after one of the mother's children, G.T., presented to the emergency room vomiting and with serious injuries such as abdominal bleeding and bruising over various areas of his body in various stages of healing. The child's physician opined that G.T.'s injuries were the result of abuse and nonaccidental blunt force trauma. According to the DHHR, petitioner admitted to squeezing then-six-year-old G.T. and causing some of the bruising when disciplining the child. Petitioner stated to the worker that he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]These children are not at issue on appeal. B.O. is the only child at issue.

was the primary caregiver for the children as the mother worked full-time, and that he had come close to "losing control" while watching the children. The DHHR also alleged that the mother was fourteen weeks pregnant with petitioner's child.[3] In February of 2020, the DHHR filed an amended petition after the mother gave birth to B.O. and named petitioner as a respondent parent.

The circuit court held an adjudicatory hearing in December of 2020, during which a physician testified that on July 26, 2019, G.T. presented to the emergency room with blood in his abdomen and multiple bruises all over his body. She noted that the inside of G.T.'s mouth had been injured and that his frenulum, the tissue connecting the gum to the lips, had been previously torn and healed. G.T.'s injuries were so severe that he was admitted into the Intensive Care Unit and underwent a battery of scans and tests. The physician interviewed the mother who explained that G.T. normally lived with his father in Iowa but that she had custody of him in the summer. The mother stated that she had noticed bruises on G.T. since he had been placed in her custody for the summer. She also told the physician that petitioner normally watched the children while she was at work. When asked about other injuries, the mother stated that G.T. had bruising on his penis and scrotum three weeks prior but would not tell the mother how he was injured. The physician opined that G.T. had been beaten so severely that it had induced vomiting and that his injuries were the result of abuse and nonaccidental blunt force trauma. Finally, the mother testified that petitioner was the only adult with access to G.T. when he sustained the injuries.

After confirming through paternity testing that petitioner was B.O.'s father, the court reconvened the adjudicatory hearing in April of 2021. The investigating DHHR worker testified that she observed G.T. at the hospital and saw bruises all over his body, including small round bruises on his face that looked like fingerprints. She also observed a huge knot on his forehead. The worker stated that petitioner denied any wrongdoing and said the bruises were caused either by normal actions like picking the child up or discipling him or that the child's younger siblings caused the bruising. Petitioner testified that he was convicted of child abuse causing injury and had been sentenced to one to five years of incarceration. Having heard the evidence, the circuit court adjudicated petitioner as an abusing parent. Petitioner then moved for a post-adjudicatory improvement period, but the guardian objected arguing that there were aggravated circumstances and that the DHHR was not required to make reasonable efforts to preserve the family. The circuit court agreed and denied petitioner's motion for an improvement period.

The court held a final dispositional hearing in May of 2021, and the DHHR requested that the circuit court terminate petitioner's parental rights. Petitioner moved for a post-adjudicatory improvement period and testified in support of the same. Petitioner stated that he was willing to participate in services offered at the jail, but he could not understand why his parental rights to B.O. were at risk due to abuse that occurred to G.T. On cross-examination, when asked to explain bruising and other injuries that had occurred over a span of time, petitioner answered that the injuries all occurred at the same time and continued to give explanations for those injuries that were inconsistent with the medical evidence, such as accidents, proper discipline, and the child playing outside or with siblings. The circuit court denied the motion finding it "completely unwarranted" given that petitioner failed to take any responsibility for G.T.'s abuse. The court

---

[3]Petitioner remained incarcerated throughout the proceedings.

further found that termination was in B.O.'s best interest and noted that the child was nearly eighteen months old and did not know petitioner as a father. Ultimately, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the future. Petitioner appeals the June 8, 2021, dispositional order terminating his parental rights to B.O.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights. According to petitioner, he should have been granted an improvement period "tailored to his temporary incarceration and imminent release." Petitioner contends that termination was a "harsh" result considering that it was undisputed that petitioner never physically abused B.O. Petitioner concedes that the court considered his "singular act of violence," which resulted in his criminal conviction for child abuse causing bodily injury, but argues that the court failed to consider petitioner's potential for reformation.

Regarding his requests for improvement periods, petitioner acknowledges that he was incarcerated at the time he filed both of his motions. As such, it is unclear how petitioner believes that he could have established that he was likely to fully comply with an improvement period at that time. Indeed, petitioner does not contend that he was likely to have fully participated in the terms and conditions of an improvement period. It is also important to note that, on appeal, petitioner continues to minimize his abusive and neglectful conduct by arguing that he did not physically abuse B.O. and that his physical abuse of the other child in the home was a "singular act of violence." This argument only underscores petitioner's continued refusal to acknowledge the wrongdoing that gave rise to the petition's filing, which he also demonstrated at several points in the proceedings below. This refusal also supports the circuit court's denial of petitioner's request for an improvement period. As the Court has explained,

---

[4]The mother completed an improvement period, resulting in the dismissal of the petition against her, and the child was reunified with her.

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As such, the refusal to acknowledge his wrongful conduct alone was a sufficient basis for denial, and we find no abuse of the circuit court's discretion in denying his motions for an improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

Likewise, we find no error in the termination of petitioner's parental rights to B.O. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate a parent's parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Here, the record clearly shows B.O.'s sibling, six-year-old G.T., sustained severe and serious injuries over a span of time while in petitioner's care and control. B.O. was at risk of suffering the same abuse as he was threatened by the physical injuries to his sibling. *See* W. Va. Code § 49-1-201 (Defining an abused child as one whose health or welfare is harmed or threatened by a parent who knowingly or intentionally inflicts physical injury or mental or emotional injury upon the child or *another child in the home*). Additionally, petitioner failed to accept any wrongdoing for G.T.'s extensive injuries. Given these issues, it is apparent that "the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems, or assist the abusing parent or parents in fulfilling their responsibilities to the child[ren]." *Id*. § 49-4-604(d)(5). Accordingly, we find that ample evidence supported the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future.

Finally, while petitioner claims that he should have been granted a less-restrictive dispositional alternative to the termination of his parental rights, we have previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, he

was not entitled to a less-restrictive alternative disposition. Based on the evidence set forth above, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 8, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton